# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

CALVIN TANKESLY,           )
                                        )
     Plaintiff,             )
                                          )
VS.                        )         No. 18-1058-JDT-cgc
                                          )
ARAMARK CORRECTIONAL       )
SERVICES, ET AL.,            )
                                          )
     Defendants.         )
                                          )

---

### ORDER DENYING PENDING MOTIONS (ECF Nos. 12, 13, 15 & 16), PARTIALLY DISMISSING COMPLAINT, AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANTS CADNEY AND RAMSEY

---

On April 6, 2018, Plaintiff Calvin Tankesly, who is incarcerated at the Turney Center Industrial Complex (TCIX) in Only, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) His complaint addresses events that occurred during his previous confinement at the Northwest Correctional Complex (NWCX), in Tiptonville, Tennessee. (ECF No. 1 at PageID 3.) The Court issued an order on April 9, 2018, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) Tankesly also moved for a temporary restraining order and a preliminary injunction, (ECF No. 6), which the Court denied (ECF No. 11). Tankesly has moved for reconsideration of that denial. (ECF No. 12.) However, nothing

in the motion persuades the Court the ruling was erroneous; therefore, for the reasons previously stated, the motion for reconsideration is DENIED.

The Clerk shall record the Defendants as Aramark Correctional Services; M. Slad, Dietician;[1] Pam Wright, Food Service Director; Jeremy Pickrel, former Food Service Manager; Sammy Taylor, former Food Service Manager; Veronica Cadney, Food Steward; Willie Ramsey, Food Steward; Susan Redden, Food Supervisor; Linda Moran, Food Steward; Freddie Thomas, Sergeant; and Carla Cole, Correctional Officer (C/O).[2]

Tankesly alleges that in 2013, he underwent treatment for throat cancer that has caused throat inflammation; loss of his saliva glands and taste buds; and damage to his throat lining, sinuses, and teeth. (ECF No. 1 at PageID 12.) Because of the treatment, Tankesly cannot produce saliva and is limited in what he can chew and safely swallow. (*Id.*) He alleges he cannot eat with the general prison population because of "unsightly sinus drainage, [and] forced extraction of foods that accumulate while eating." (*Id.* at 12 n.7.)

Tankesly generally alleges that the Aramark Defendants knew of his condition but refused to provide him sufficient nutrition through foods he could eat. (*Id.* at PageID 8.)

---

[1] Tankesly originally named Monqie Skowronski as a Defendant in this suit. He later notified the Court that his intended Defendant was M. Slad. (ECF No. 5 at PageID 109-10.) The Court allowed the substitution, (ECF No. 6), and will apply all allegations against Skowronski instead to Defendant Slad.

[2] Tankesly sues two sets of Defendants: the "Aramark Defendants," which include Aramark, Slad, Wright, Pickrel, Taylor, Cadney, Ramsey, Redden, and Moran; and the "NWCX Defendants," which include Thomas and Cole. For ease of understanding, the Court will refer to the Defendants by group when discussing Tankesly's allegations and claims.

He alleges that the Aramark Defendants did not provide him the required 2,500 calories per day of nutrition, causing him "to suffer unnecessarily" from weight loss, dizzy spells, light headedness, fatigue and tooth breakage. (*Id.* at PageID 13.) Tankesly states he was temporarily housed at the Lois M. Deberry Special Needs Facility (SPND)[3] in Nashville while he awaited court proceedings in February 2018. (*Id.* at PageID 14.) There he received a "'Special Diet' with proper portions." (*Id.* (emphasis omitted).) He asserts that the Defendants at NWCX had the same options available but refused to provide them to him. (*Id.*) Instead, he often went without eating or consumed well below 2,500 calories per day, which he believes is necessary to maintain his health. (*Id.* at PageID 15-16.) Tankesly asserts that he was medically prescribed a special diet, but the Defendants refused to comply with the directive, "citing 'Corp. policy.'" (*Id.* at PageID 16.) He separately alleges that Defendants Cadney and Ramsey intercepted Tankesly's food tray from the inmate serving the meals and threw into the trash foods that he could eat. (*Id.* at PageID 17.)

Tankesly alleges that Aramark Defendants Slad, Wright, Pickrel, and Taylor "had a duty to hire and train competent food stewards" who would provide him adequate nutrition. (*Id.* at PageID 9.) He asserts that these Defendants were aware of the food stewards' refusal to provide him alternative foods and were "actively complicating Plaintiff's plight, denying him sufficient nutrition." (*Id.* at PageID 17.) Tankesly claims that "the unwritten policies,

---

[3] The SPND is a Tennessee Department of Correction facility for inmates "with multiple and complex medi[c]al problems." Https://www.tn.gov/correction/sp/state-prison-list/lois-m-deberry-special-needs-facility.html.

customs and practices providing sufficient nutrition to post cancer patients is unreasonable and outdated," leading to his inadequate nutrition. (*Id.* at PageID 21 (emphasis omitted).)

Tankesly suggests that Aramark, "for financial reasons and gain," has broken its contract with the Tennessee Department of Correction "to provide sufficient nutrition of 2,500 calories per inmate, per day." (*Id.* at PageID 10.) He asserts that Aramark has "the means and capacity to adjust their general menu to accommodate 'specific' medical conditions – but insist on putting profit interest ahead of providing sufficient nutrition to Plaintiff." (*Id.* at PageID 20.) He also suggests in passing that Aramark and its employees conspired to deny inmates required food, which Tankesly asserts amounts to violations of his rights under the Eighth and Fourteenth Amendments. (*Id.* at PageID 10-11.)

Tankesly alleges that the NWCX Defendants ordered Tankesly to leave the dining area on several occasions before he received his meal because Tankesly did not sign an unspecified document. (*Id.* at PageID 21.) He also alleges that Defendant Cole ordered diet line workers to remove food from his tray. (*Id.*)

Tankesly seeks nominal, compensatory, and punitive damages from each Defendant, as well as declaratory and injunctive relief. (*Id.* at PageID 23.) He sues the Aramark Defendants in their official and individual capacities, (*id.* at PageID 20), but sues the NWCX Defendants in only their individual capacities (*id.* at PageID 23).

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)    is frivolous, malicious, or fails to state a claim upon which relief may
> be granted; or

>    (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create

a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Tankesly filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

To the extent Tankesly seeks to sue Defendants Slad, Wright, Pickrel, Taylor, Cadney, Ramsey, Redden, and Moran in their official capacities, those claims are against their employer, Aramark. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners. *Id.* at 748–49; *Street*, 102 F.3d at 817–18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To hold Aramark responsible, Tankesly "must show that a policy or well-settled

custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

Tankesly does not allege that a policy or custom of Aramark is responsible for his allegedly inadequate meals. Nor does he allege that the employees acted pursuant to a policy or custom in causing any of the alleged harm to him. Tankesly at various points in his complaint generally mentions a policy that he alleges Aramark failed to follow or failed to implement. (ECF No. 1 at PageID 8, 9, 10, 19.) Allegations that an employee failed to follow an Aramark policy or custom do not amount to a cognizable claim in an action under § 1983. *See Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). Separately, Tankesly's unsupported assertions of a conspiracy, and that Aramark has failed to comply with its "contractual agreement with the State of Tennessee, TDOC and NWCX to provide sufficient nutrition" to inmates, are not entitled to be assumed true. *See Iqbal*, 556 U.S. at 679. (*Id.* at PageID 10.) Tankesly therefore fails to state a claim against Aramark.

Tankesly makes many general assertions against some or all of the Aramark Defendants but fails to specify what actions taken by any individual Defendant violated his constitutional rights. For example, he alleges that all of the Aramark Defendants "by their actions and/or inactions have and continue to cause Plaintiff to suffer," but he does not specific what those actions were. (ECF No. 1 at PageID 13.) To state a claim for relief Tankesly must make a "'showing,' rather than a blanket assertion, of entitlement to relief."

*Twombly*, 550 U.S. at 555 n.3. The Court will therefore consider only the allegations against the Aramark Defendants that suffice to satisfy Tankesly's pleading obligations.

Tankesly's allegations that he has been provided inadequate nutrition amount to a claim of deliberate indifference, which arises under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38. The subjective component must be evaluated for each defendant individually. *Bishop v. Hackel*, 636 F.3d 757, 767-68 (6th Cir. 2011) ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

The Eighth Amendment imposes a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. The Eighth Amendment, however, "is concerned only with 'deprivations of essential food, medical care, or sanitation' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).

The Sixth Circuit has held in several cases that "the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation." *Boone v. MacLaren*, No. 2:16-CV-271, 2017 WL 3015771, at *3 (W.D. Mich. July 17, 2017) (citing *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same)). In these cases, the inmate's claim failed because he did not allege "that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456; *see Cunningham*, 667 F.2d at 566 ("[T]he one meal a day furnished was sufficient to maintain normal health for the 15 days involved.")

Tankesly alleges that he received inadequate nutrition at the NWCX on an almost daily basis. He alleges that the insufficient nutrition caused weight loss, dizzy spells, light headedness, fatigue, [and] tooth breakage" and that his health and quality of life diminished. (ECF No. 1 at PageID 13.) These allegations likely satisfy the objective

component of an Eighth Amendment claim. *See Sims v. Mich. Dep't of Corr.*, 23 F. App'x 214, 216 (6th Cir. 2001). The question for the Court is whether Tankesly alleges sufficient facts against any named Defendant for his or her role in his allegedly deficient nutrition. The Court will address that question with respect to each Defendant.

Tankesly's only allegation specific to Defendant Slad is that Slad refused to modify the menu to provide foods with sufficient nutrition to Tankesly.[4] He alleges that Slad knew Aramark had the capacity to provide foods for a "special diet" like his because Tankesly previously received such a diet when he was temporarily housed at the SPND where Aramark also provided meals. Tankesly asserts that NWCX therefore had these other options available but refused to provide him with them. However, that the SPND, a medical facility, had a special needs menu does not necessarily mean that a general facility like the NWCX also had the capability to provide the same special needs menu. Tankesly also does not allege that he actually requested a diet similar to what he received at the SPND and that Slad refused to provide him the alternative foods.[5] Nor does he allege that Slad knew of alternative options and had access to them at NWCX but deliberately chose

---

[4] Tankesly alleges that Slad has refused to provide sufficient nutrition to him "and/or any cancer patient." (ECF No. 1 at PageID 15.) Tankesly, however, does not have standing to assert claims on behalf of any inmate other than himself. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (citing *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989)).

[5] Tankesly alleges he was prescribed a "medical" diet which the Aramark Defendants refuse to follow. (ECF No. 1 at PageID 13, 16.) The Court presumes this medical diet is the same "special" diet he received at the SPND. (*Id.* at PageID 14.) Tankesly does not allege that the special medical diet was intended to continue in effect when he returned to the NWCX or that it was prescribed by any medical professional at the NWCX.

not to provide them to Tankesly. Tankesly therefore fails to state a claim of deliberate indifference against Defendant Slad.

Tankesly alleges that Defendants Wright, Taylor and Pickrel were aware of, but failed to correct, the actions of their subordinate food stewards. Under § 1983, however, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).

Tankesly does not allege that Wright, Taylor, or Pickrel authorized, approved of, or knowingly acquiesced in the actions of the food stewards. He alleges only that the Defendants failed to act in response to their subordinates' actions. Tankesly therefore fails

to state a claim against these Defendants based on their role as a supervisor of other Aramark employees.

Thomas alleges that Defendants Cadney, Ramsey, Redden, and Moran are aware of his medical issues but provide him foods that he has difficulty eating unaccompanied by gravy or condiments that aide him in swallowing the food. He alleges that he is forced to refuse the foods offered and often is left with "as few as 2 items per meal" to eat, if he has any food at all, several times per week. (ECF No. 1 at PageID 16.) Tankesly also claims that Cadney and Ramsey swap the items on his tray as it is being served and throw the foods he could eat into the trash. (*Id.* at PageID 17.) He alleges Cadney and Ramsey do this "three to four times a week, denying any daily nutrition during their shifts." (*Id.* at PageID 17 n.19.)

Tankesly fails to state a claim against Defendants Redden and Moran. Though he does allege that Redden and Moran were subjectively aware of Tankesly's eating difficulties, he does not specify how often Redden and Moran provided only foods he cannot eat. Being only occasionally provided an inadequate meal does not constitute an Eighth Amendment violation. *See Boone*, 2017 WL 3015771, at *3 (citing cases). Without information about the frequency of these meals, Tankesly does not state a claim against Redden and Moran.

Tankesly's allegations against Defendants Cadney and Ramsey, however, are specific and sufficiently state a claim for relief. He alleges that Cadney and Ramsey have not only refused to provide him the foods and condiments they know he can eat but have stopped inmate workers from providing Tankesly those foods and thrown them into the

trash. They have performed this routine three to four times per week, every week that they

work in the dining hall. (ECF No. 1 at PageID 17 & n.19.) Taking Tankesly's allegations

as true, he states an Eighth Amendment claim against Defendants Cadney and Ramsey.

Tankesly alleges that Defendant Thomas "routinely" ordered him to leave the dining

area before he received a meal because he refused to sign an unspecified document. (ECF

No. 1 at PageID 7.) He alleges this occurred "often two (2) meals a day, several times a

week." (ECF No. 1 at PageID 16.) Tankesly claims that Defendant Cole "repeatedly"

ordered inmate workers to remove foods from Tankesly's tray. (*Id.* at PageID 21.)

Tankesly does not clarify how many times either event occurred.[6] Given Tankesly's

vagueness, he does not sufficiently allege that Defendant Thomas or Cole denied him an

adequate meal with enough frequency to constitute an Eighth Amendment violation.

*See Cunningham*, 667 F.2d at 566; *Boone*, 2017 WL 3015771, at *3.

As the Court noted in its earlier order, Tankesly's request for injunctive relief is

moot because he is no longer in custody at the NWCX. (ECF No. 11 at PageID 247 (citing

*Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003), and *Kensu v. Haigh*, 87 F.3d 172,

175 (6th Cir. 1996))).

In conclusion, the Court DISMISSES Tankesly's claims against Defendants

Aramark, Slad, Wright, Pickrel, Taylor, Redden, Moran, Thomas, and Cole for failure to

---

[6] The grievances Tankesly attached to his complaint suggest that Defendant Thomas refused to allow Tankesly to eat breakfast three times over a two-week span. (ECF No. 1 at PageID 73.)

state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

It is ORDERED that the Clerk shall issue process for Defendants Veronica Cadney and Willie Ramsey and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Cadney and Ramsey pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Tankesly shall serve a copy of every subsequent document he files in this case on the attorneys for Defendants Cadney and Ramsey or on Defendants Cadney and Ramsey personally if they are unrepresented. Tankesly shall make a certificate of service on every document he files. Tankesly shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[7]

Tankesly has also moved for an *ex parte* hearing regarding service of process. (ECF No. 13.) That motion is DENIED as moot.

Tankesly has further moved to add additional Defendants, all of whom work at the TCIX in Only, Tennessee. (ECF Nos. 15 & 16.) However, those Defendants have no connection with this district. Only is in Hickman County, which is part of the Columbia Division of the Middle District of Tennessee. *See* 28 U.S.C. § 123(b)(3). The proposed

---

[7] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

supplemental claims arose at the TCIX and should be filed in that district.  Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  However, Tankesly did not include these Defendants in his initial complaint and instead seeks to add them through supplemental pleadings.  Therefore, his motions to supplement the complaint, (ECF Nos. 15 & 16), are DENIED.  If Tankesly wishes to sue these TCIX Defendants, he should file a separate complaint in the U.S. District Court for the Middle District of Tennessee, Columbia Division, where the events occurred and where venue is appropriate. *See* 28 U.S.C. § 1391(b).

Tankesly is reminded that he must promptly notify the Clerk of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE