IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CALVIN TANKESLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 18-cv-01058-SHM-cgc |
| | ) | |
| ARAMARK CORRECTIONAL | ) | |
| SERVICES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Calvin Tankesly ("Tankesly") has asserted claims under 42 U.S.C. § 1983 against Defendant Veronica Cadney ("Cadney") and Defendant Willie Ramsey ("Ramsey"). The Court previously dismissed all claims against Ramsey. (ECF No. 57.) There are two motions before the Court: 1) Cadney's Motion for Summary Judgment (ECF No. 58); and 2) Tankesly's Motion for Reconsideration of the Court's Order Dismissing Claims Against Ramsey (ECF No. 62). Both Motions are ripe. (See ECF Nos. 63-66.) For the following reasons, Cadney's Motion for Summary Judgment is **GRANTED**, and Tankesly's Motion for Reconsideration is **DENIED**.

## I. Background

Tankesly has been in state custody since 1997. In 2013, he underwent throat cancer treatment that has caused throat

inflammation, loss of his saliva glands and taste buds, and damage to his throat lining, sinuses, and teeth. Tankesly cannot produce saliva and is limited in what he can chew and swallow safely. From March 2015 to January 2019, Tankesly was incarcerated at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee.

In his Initial Complaint, Tankesly asserts claims against Aramark Correctional Services ("Aramark") and Aramark employees, including Cadney and Ramsey. (See ECF No. 1 at ¶ 44.) Aramark has provided meal service to NWCX prisoners since September 2016. (ECF No. 1 at ¶ 45.) Tankesly generally alleges that Aramark and its employees failed to provide him with food that complied with his medical requirements. (See ECF No. 1 at ¶ 48.) As a result, Tankesly did not receive adequate nutrition and experienced "weight loss, dizzy spells, light headedness, fatigue and tooth breakage." (ECF No. 1 at ¶ 51.)

Tankesly specially alleges that, as Food Stewards at NWCX, Cadney and Ramsey would intercept Tankesly's food tray, throw away food that Tankesly could eat, and provide Tankesly with food that he could not eat. (ECF No. 1 at ¶¶ 73-75.) This interference with Tankesly's food service was allegedly part of a "conspiracy campaign of vindicative and retaliatory measures . . . ." (ECF No. 1 at ¶ 73.) In footnotes, Tankesly states that Cadney and Ramsey had provided food service at NWCX since Tankesly's transfer to NWCX in 2015 and had interfered with Tankesly's food service three

to four times a week. (ECF No. 1 at ¶¶ 73 n.17, 74 n.19.) Tankesly includes with his Initial Complaint copies of prison grievances that he filed against Cadney and Ramsey.

The Court screened Tankesly's Initial Complaint. (ECF No. 17.) It found that Tankesly had adequately asserted Eighth Amendment deliberate indifference claims against Cadney and Ramsey. (ECF No. 17, PageID 324-325.) The Court dismissed claims against Aramark and other named Aramark employees. (ECF No. 17, PageID 324.)

Tankesly filed a Motion to Amend the Initial Complaint and sought to "incorporate" an Amended Complaint with his original pleadings. (ECF No. 20, PageID 336.) The Amended Complaint contains "b." paragraphs that correspond to paragraphs in the Initial Complaint. (ECF No. 20-1 at ¶¶ 1b-104b.) Throughout the Amended Complaint, Tankesly specifies that Aramark employees violated his constitutional rights "seven days a week between: October 2017 — December 2017 and January 2018 — December 2018." The paragraphs addressing Cadney's and Ramsey's interference with Tankesly's food service include the same specifying language. (See ECF No. 20-1 at ¶¶ 73b-77b.) Tankesly also explains that Cadney and Ramsey frequently failed to have Tankesly's required diet prepared at mealtimes and would provide substitutions that Tankesly could not eat. (ECF No 20-1 at ¶¶ 76b, 77b.) On other occasions, Cadney and Ramsey denied Tankesly's request for substitutions, citing

corporate policy. (ECF No 20-1 at ¶¶ 76b, 77b.) Tankesly cites this inconsistency as evidence of the conspiracy against him.

Ramsey filed a Motion to Dismiss for Failure to State a Claim. (ECF Nos. 49, 50.) [1] The Motion argues that Tankesly failed to properly exhaust administrative remedies on his claims against Ramsey. It asserts that, of the grievances included with Tankesly's Initial Complaint, only a May 16, 2017 grievance and a September 16, 2017 grievance name Ramsey. (ECF No. 50, PageID 474.) Tennessee Department of Correction ("TDOC") policy required prisoners to file grievances on Form CR-1394. (ECF No. 50, PageID 475.) Tankesly's grievances against Ramsey were not filed on Form CR-1394. (ECF No. 50, PageID 474.)

In his Response, Tankesly explains that "Form CR-1394 . . . is a document that is only provided [returned] to the inmate grievant after it is processed through all three levels of the grievance process." (ECF No. 51, PageID 526) (brackets in original). Tankesly says that he requested copies of his grievances from the NWCX clerk, but was told that the requested grievances were "in archive" and were unavailable. (ECF No. 51, PageID 526.) He includes a list of missing grievances that includes a grievance against Ramsey. (ECF No. 51-1, PageID 529.) The Response does not include an affidavit from Tankesly on his exhaustion attempts, and

---

[1] Because the Court had not granted Tankesly's Motion to Amend, Ramsey's motion was directed to Tankesly's Initial Complaint.

it does not appear that Tankesly sought the missing grievances through discovery.

In an order dated January 12, 2022, the Court granted Tankesly's Motion to Amend. (ECF No. 57, PageID 556.) After screening the Amended Complaint, the Court concluded that Tankesly had failed to correct deficiencies in the Initial Complaint because he had not identified "which Defendant specifically took what action on particular dates and with what knowledge." (ECF No. 57, PageID 556.) The Court dismissed Defendants Aramark, Slad, Wright, Pickrel, Taylor, Redden, Moran, Thomas, and Cole and recommended that the dismissals be treated as a strike pursuant to 28 U.S.C. § 1915(a)(3). (ECF No. 57, PageID 557.) The Court then considered Ramsey's Motion to Dismiss. (ECF No. 57, PageID 559.) Applying a summary judgment standard, the Court held that Tankesly had failed to exhaust administrative remedies on his claims against Ramsey. The Court found that Tankesly's May 16, 2017 and September 16, 2017 grievances did not comply with TDOC policy because Tankesly did not submit the grievances on Form CR-1394. (ECF No. 57, PageID 567.) Cadney filed her Motion for Summary Judgment on February 2, 2022. (ECF No. 58.)

## II. Motion for Summary Judgment

Cadney's Motion for Summary Judgment argues that Tankesly failed to exhaust administrative remedies on his claims against Cadney. The Motion asserts that Tankesly filed grievances against

Cadney on May 16, 2017, September 19, 2017, and September 22, 2017, based on incidents that occurred in May 2017 and September 2017. It includes a declaration by Michelle Gonzales, Grievance Chairperson at NWCX, that Tankesly did not file any grievance against Cadney after September 2017. (ECF No 58-1 at ¶ 5.) Because Tankesly's Amended Complaint specifies that the violations of his constitutional rights occurred between October 2017 — December 2017 and January 2018 — December 2018, Cadney argues that Tankesly's grievances cannot exhaust the claims raised in the Amended Complaint.

In his Response, Tankesly argues that Cadney's conduct "goes as far back as 2015 and continues through 2018" and that Tankesly's complaints assert claims against Cadney for that entire period. (ECF No. 64-1, PageID 686.) Tankesly argues that Cadney's conduct represents a "continuing violation" and that Tankesly's grievances adequately exhausted administrative remedies because the grievances provided notice of his claims. (ECF No. 64-1, PageID 684, 705.)

**A. Standard of Review**

Under Federal Rule of Civil Procedure 56(a), a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party,

having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA has been interpreted to require "proper exhaustion," meaning that a prisoner must "'complete the administrative review process in accordance with the applicable procedural rules,' . . . [as] defined not by the

PLRA, but by the prison grievance process itself." Jones v. Bock*,*
549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo*,* 548 U.S. 81, 88
(2006)).

A prisoner's lack of compliance with the prison grievance
process may be excused if the administrative remedies are not
available, but courts have required a prisoner to make
"'affirmative efforts to comply with the administrative procedures
before analyzing whether the facility rendered these remedies
unavailable.'" Napier v. Laurel Cnty.*,* 636 F.3d 218, 223 (6th Cir.
2011) (citation omitted). When a prisoner makes affirmative
efforts to comply but does not succeed, courts analyze "whether
those 'efforts to exhaust were sufficient under the
circumstances.'" Risher v. Lappin*,* 639 F.3d 236, 240 (6th Cir.
2011) (quoting Napier*,* 636 F.3d at 224).

Although exhaustion is mandatory under the PLRA, the failure
of a prisoner plaintiff to satisfy the exhaustion requirement is
an affirmative defense. Jones, 549 U.S. at 211–17. Once the defense
of failure to exhaust is raised, a prisoner plaintiff must present
"significant probative evidence" showing that he has complied with
the requirements of exhaustion. See Napier, 636 F.3d at 225
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986)). "Summary judgment is appropriate only if defendants
establish the absence of a 'genuine dispute as to any material

fact' regarding non-exhaustion." Risher, 639 F.3d at 240 (quoting Fed. R. Civ. P. 56(a)).

**B. Analysis**

Before the Court can consider whether Tankesly properly exhausted administrative remedies on his claims against Cadney, it must consider what constitutes the controlling complaint. Tankesly's Initial Complaint may be read to allege that Cadney and Ramsey had interfered with Tankesly's food service three to four times a week since 2015. The "October 2017 - December 2017 and January 2018 - December 2018" and "seven days a week" specifying language appears only in Tankesly's Amended Complaint. Cadney asserts that amended complaints always supersede prior complaints.

Generally, amended pleadings do supersede original pleadings. See Hayward v. Cleveland Clinic Found., 759 F.3d 601, 617 (6th Cir. 2014); see also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. updated Apr. 2021) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies . . . ."). "If, however, the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading." Clark v. Johnson, 413 F. App'x 804, 811–12 (6th Cir. 2011); see also Wright & Miller, § 1476 ("[T]he original pleading, once superseded, cannot be utilized to cure defects in the amended

pleading, unless the relevant portion is specifically incorporated in the new pleading.").

There is some evidence that Tankesly intended the Amended Complaint to supplement his Initial Complaint. Tankesly's Motion to Amend seeks to "incorporate" the Amended Complaint with the Original Pleadings. (ECF No. 20, PageID 336.) The paragraphs in the Amended Complaint have a "b." designation, which suggests that they should be read in conjunction with corresponding paragraphs in the Initial Complaint. (ECF No. 20-1 at ¶¶ 1b-104b.)

However, the date range specified in the Amended Complaint supersedes any date range found in the Initial Complaint. The Amended Complaint and the Initial Complaint contain contradictions that show Tankesly intended portions of his Amended Complaint to supersede the Initial Complaint. For example, the frequency of interference alleged in the Amended Complaint, "seven days a week," contradicts the "three to four days a week" alleged in the Initial Complaint.[2] The Amended Complaint presents the "seven days a week" language and the new date range as part of the same phrase, which shows that Tankesly also intended the date range in the Amended Complaint to supersede the date range in the Initial Complaint. Tankesly clearly sought to amend his Initial Complaint in response

---

[2] Footnotes to the Amended Complaint continue to state that Cadney and Ramsey interfered with Tankesly's food service three to four times a week. (ECF No. 20-1 at ¶¶ 73b n.14, 74b n.16.) The Court concludes that language is an inadvertent holdover from the Initial Complaint.

to the Court's order that faulted Tankesly for failing to allege the frequency of Defendants' conduct. In its second screening order, the Court considered the additional information provided in Tankesly's Amended Complaint. (ECF No. 57, PageID 556.) Tankesly cannot offer and withdraw the date range in the Amended Complaint as it suits him. Even if the Court were to accept the broader allegations in the Initial Complaint as controlling, it would dismiss Tankesly's complaint for failure to state a claim.[3] See Becker v. Montgomery, 43 F. App'x 914, 917 (6th Cir. 2002) (affirming dismissal of plaintiff's deliberate indifference claim where plaintiff did not allege specific dates of harmful conduct); see also (ECF No. 57, PageID 556) (dismissing other Aramark employees because Tankesly's Amended Complaint did not identify which Defendant took what action on particular dates). Rather than dismiss the claims, the Court accepts the date range alleged in the Amended Complaint.

The next question is whether Tankesly's May 2017 and September 2017 grievances exhaust his deliberate indifference claims arising between October 2017 — December 2017 and January 2018 — December 2018. The Sixth Circuit has held that grievances do not exhaust

_____

[3] The Court may dismiss a complaint brought "with respect to prison conditions" for failure to state a claim even if the Court has already conducted an initial screen of the complaint. See Davis v. Gallagher, 951 F.3d 743, 751 (6th Cir. 2020) (citing 42 U.S.C. § 1997e(c)(1)).

claims based on subsequent, discrete events with discrete causes. See Siggers v. Campbell, 652 F.3d 681 (6th Cir. 2011). In Siggers, corrections officials issued prison-mail rejections on September 12, 15, and 29, 2006, and again on March 9, 2007. Id. at 688-89. The prisoner complained that the officials violated his rights by rejecting his incoming mail. Id. at 689-90. The district court held that the prisoner's September 16, 2006 grievance was sufficient to exhaust only the claims relating to the September 12, 2006 mail rejection. Id. at 690.

On appeal, the prisoner argued that the district court erred in holding that he was required to file individual grievances challenging each mail rejection. Id. at 691. The prisoner asserted that the September 16, 2006 grievance, which addressed only the September 12, 2006 mail rejection, put the defendants on notice of a continuing violation and was, therefore, sufficient to exhaust claims of harm caused by all subsequent mail rejections. Id. at 692. Rejecting that argument, the Siggers Court explained:

> [The prisoner] was not suffering from one, continuing harm and government indifference. Rather, the Notices of mail rejection that [the prisoner] identifies are each discrete events, and each Notice involves separate facts and circumstances—and even different policy directives. Furthermore, a grievance on each would have permitted an investigation into the reasons for each rejection, based on the different contents of each rejected piece of mail . . . .

Id. at 693. The Court also found it significant that the applicable grievance policy did not impose sanctions on prisoners who filed multiple grievances. Id.

The facts here compare favorably to those in Siggers. Each alleged interference with Tankesly's meal service was a discrete, grievable event. Tankesly asserts that there was a single conspiracy to deprive him of adequate nutrition. However, his complaints clarify that the reasons given for the alleged interference differed from day to day. Sometimes the Food Stewards did not have Tankesly's food prepared and provided substitutions. Sometimes they removed food from Tankesly's tray that he could eat. Sometimes they rejected Tankesly's request for substitutions based on corporate policy. Separate grievances would have allowed investigation into the reasons behind each alleged interference. TDOC policy did not prevent Tankesly from filing grievances based on interference that occurred between October 2017 — December 2017 and January 2018 — December 2018.

Tankesly's grievances against Cadney did not exhaust subsequent claims arising between October 2017 — December 2017 and January 2018 — December 2018. Because Tankesly did not exhaust his administrative remedies on his claims against Cadney, the Motion for Summary Judgment is **GRANTED**. Tankesly's claims against Cadney are **DISMISSED**.

13

### III. Motion for Reconsideration

In his Motion for Reconsideration, Tankesly asks the Court to revisit its decision that Tankesly did not properly exhaust his administrative remedies on his claim against Ramsey. (ECF No. 62, PageID 592.) He also asks the Court to revisit its strike recommendation. (ECF No. 62, PageID 597.) Tankesly asserts that he filed a September 21, 2017 grievance against Ramsey that fully complied with TDOC grievance procedures. (ECF No. 62, PageID 593.) The September 21, 2017 grievance is in addition to the May 16, 2017 and September 16, 2017 grievances that the Court found did not comply with TDOC policy. Documents attached to Tankesly's Motion confirm that Tankesly filed a September 21, 2017 grievance on Form CR-1394 and that the grievance underwent three levels of review, as required by TDOC policy. (ECF No. 62-1, PageID 601-10.) Tankesly asserts that although the TDOC Commissioner's office completed the final level of review on April 10, 2018, Tankesly did not receive a copy of the grievance material until September 27, 2021. (ECF No. 62, PageID 593.) Tankesly claims that he sent a copy of the missing grievance material to the Clerk of the Court immediately after he received it and before the Court entered its order dismissing Ramsey. (ECF No. 62, PageID 593.) The docket does not show that the Clerk received additional grievance material.

**A. Standard of Review**

Under Federal Rule of Civil Procedure 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004).

The Local Rules of the United States District Court for the Western District of Tennessee provide that "any party may move, pursuant to Fed. R. Civ. P. 54 (b), for the revision of any interlocutory order made by that Court . . . ." LR 7.3(a). A motion for reconsideration must "specifically show" one of three elements:

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

Id. at 7.3(b). "No motion for revision may repeat any oral or written argument made by the movant in support of or in opposition to the interlocutory order that the party seeks to have revised." Id. at 7.3(c).

### B. Analysis

Tankesly has not satisfied the requirements for revision of an interlocutory order. Accepting his assertions, Tankesly received the missing grievance material on September 27, 2021. The Court entered its order dismissing Ramsey on January 12, 2022. Tankesly had the grievance material when the Court entered its order, but did not take adequate steps to bring the material to the Court's attention. His Motion for Reconsideration does not satisfy Local Rule 7.3(a)(1).

In his initial Response to Ramsey's Motion to Dismiss, Tankesly raised the issue that there was a grievance against Ramsey that he had been unable to obtain. (See ECF No. 51-1, PageID 529) (providing list of missing grievances). The Court did not address that issue in its order of dismissal. However, at the time of the order, Tankesly had not provided the "significant probative evidence" of exhaustion required at the summary judgment stage. See Napier, 636 F.3d at 225. Tankesly's filings contained only bare assertions about the existence of a September 21, 2017 grievance. He did not include an affidavit on his exhaustion attempts. The Court did not manifestly fail to consider material

16

facts or dispositive legal arguments in its order of dismissal. Tankesly's Motion for Reconsideration does not satisfy Local Rule 7.3(a)(3).

Even if the Court were to reconsider its order of dismissal, it would dismiss the claims against Ramsey for the reasons set out in Section II.B, supra. Tankesly's Amended Complaint alleges that Ramsey violated Tankesly's constitutional rights between October 2017 — December 2017 and January 2018 — December 2018. (ECF No. 20-1 at ¶¶ 73b-77b.) The grievance material that Tankesly now asks the Court to consider relates to events that occurred in September 2017. (ECF No. 62, PageID 606.) Tankesly did not exhaust claims against Ramsey that arose during the period identified in his Amended Complaint.

In his Motion for Reconsideration, Tankesly also asks the Court to revisit its strike recommendation. (ECF No. 62, PageID 597.) He argues that a prisoner's entire action must be dismissed before it can be counted as a strike. (ECF No. 62, PageID 596.) A prisoner may not proceed in forma pauperis if, on three or more prior occasions, the prisoner brought "an action or appeal" that was dismissed as frivolous or malicious or that failed to state a claim. See 28 U.S.C. § 1915(g). Those prior actions are often called "strikes." A strike recommendation made by the dismissing court is purely advisory and does not bind future courts enforcing § 1915(g). Simons v. Washington, 996 F.3d 350, 353-54 (6th Cir.

2021). Tankesly is correct that dismissal of fewer than all defendants cannot count as a strike under § 1915. <u>See</u> <u>Taylor v.</u> <u>First Med. Mgmt.</u>, 508 F. App'x 488, 495-96 (6th Cir. 2012) ("Section 1915(g) speaks of appeals and actions, but not claims. . . . Even if an action only has one meritorious claim amidst a sea of frivolous ones, the case cannot count as a § 1915(g) strike.") The Court has now dismissed all claims against Cadney, the only remaining defendant. The Court recommends that this action count as a strike under § 1915. <u>See</u> <u>Pointer v. Wilkinson</u>, 502 F.3d 369, 376 (6th Cir. 2007) ("[W]here an entire complaint is dismissed, in part for failure to exhaust and in part for one of the grounds stated in § 1915(g), the dismissal should count as a strike.") Tankesly's Motion for Reconsideration is **DENIED**.

**IV.   Conclusion**

For the foregoing reasons, Cadney's Motion for Summary Judgment is **GRANTED**. All claims against Cadney are **DISMISSED**. Tankesly's Motion for Reconsideration is **DENIED**. The Court recommends that this action be treated as a strike under 28 U.S.C. § 1915(g).

SO ORDERED this 1st day of August, 2022.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE